UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

CURTIS MAYON,
    Plaintiff,

vs.                                  05-1183

COREY JAMISON, et. al.,
    Defendants.

## ORDER

This cause is before the court for consideration of the defendants' motion for summary judgement. [d/e 59]

### I. BACKGROUND

The plaintiff, Curtis Mayon, brought this action pursuant to 42 U.S.C. §1983 alleging that his constitutional rights were violated at the Knox County Jail. On January 25, 2006, the court conducted a merit review of the plaintiff's amended complaint. The court found that the plaintiff has adequately alleged that Jail Administrator Richard Morris, Officer Corey Jamison and Officer Linda Lovedahl were deliberately indifferent to his serious medical condition. The plaintiff is suing Defendants Lovedahl and Jamison in their individual capacities and he is suing Defendant Morris in his individual and official capacities.

### II. FACTS

The following facts are taken from the statement of undisputed facts, the plaintiff's response and the exhibits submitted by the parties.

The plaintiff was a pretrial detainee at the Knox County Jail from April 8, 2004 to June 24, 2004 housed in the E-pod area. In the early morning hours of May 23, 2004, the plaintiff got into a dispute with another inmate named Danny Joseph. The plaintiff hit Joseph in the head with an empty juice cup drawing blood. The two then exchanged punches. During the altercation, the plaintiff fell back and hit his head on the chuckhole door. The plaintiff was not bleeding and had no visible injuries due to the fight.

By the time Defendants Jamison and Lovedahl entered the cell area, the two had separated. Inmate Joseph was in his cell and the plaintiff was standing outside his own cell next door. The parties disagree about what happened next. Defendant Jamison says he asked the plaintiff what happened and the plaintiff responded that there was no fight and nothing happened. Both officers say the plaintiff tried to move past them toward Inmate Joseph. Officer Jamison says he was concerned the plaintiff would go after Inmate Joseph again, so he pushed the plaintiff back in his cell and secured the door. Officer Lovedahl says the plaintiff never mentioned anything to her about his injuries and she never heard the plaintiff ask Defendant

Jamison for medical attention.

The plaintiff disputes that he said anything about the fight to Officer Jamison and instead claims he told both officers that his vision was blurred and he could not feel his upper extremities. The plaintiff says he could not have moved toward the other inmate because he was "dazed and virtually unconscious." (Resp. p. 3) The plaintiff also maintains that Jamison did not simply push him back into his cell, but assaulted him. In parts of his response, it appears the plaintiff may be attempting to claim that this attack lead to his head injury. This claim was not a part of the plaintiff's complaint and is not a part of this lawsuit. *See* Amended Complaint [d/e 22]; January 25, 2006 Merit Review Order.

Defendant Lovedahl then escorted Inmate Joseph to the medical unit where he received stitches for the gash to his forehead. A short time later, Jamison took the plaintiff to a segregation cell. Both parties agree that at this point, the plaintiff said his vision was blurred and he had a headache.

Defendant Jamison's shift ended at 7:00 a.m., shortly after the altercation between the plaintiff and Inmate Joseph. Defendant Jamison says he believed the plaintiff's injuries were minor, but told officers on the first shirt that the plaintiff had requested medical attention. The plaintiff disagrees, but has no evidence that Jamison did not talk to the officers.

Later the next day, May 24, 2004, Jail Nurse Crystal Crane visited the plaintiff in segregation. The plaintiff told the nurse that his vision was blurred and he had a severe headache. The nurse felt the back of the plaintiff's head, told him he might have a slight concussion and gave him two Tylenol and a Benadryl. After this initial visit, the nurse checked on the plaintiff ever day. The plaintiff did not ask the nurse for additional medication.

The plaintiff submitted a grievance to Defendant Morris on May 25, 2004 claiming that the jail staff ignored his complaints and placed him in segregation without medical treatment. Defendant Morris denied the grievance on May 26, 2004, because the plaintiff had already seen the nurse and was scheduled to see the doctor that day.

The plaintiff saw the jail doctor on May 26, 2004. The doctor felt the back of the plaintiff's head, checked his eye with a light and performed a test where he asked the plaintiff to follow his finger with his eyes. The doctor told the plaintiff he may have had a concussion and prescribed Tylenol for the pain. The plaintiff asked for X-rays and the doctor refused the request. The plaintiff was also released from segregation on May 26, 2004.

The plaintiff says he suffered from headaches prior to the incident at the Knox County Jail and never sought medical treatment. While in the Knox County Jail, any inmate who requires medical attention must submit a written medical request form to see a nurse or a doctor. During his stay at the Knox County Jail, the plaintiff never submitted a written medical request.

The plaintiff did submit written requests for clothing, a Bible, a game and to be placed on the list for Bible Study. These requests were granted.

The plaintiff left the Knox County Jail on June 24, 2004 and is currently in the Illinois Department of Corrections.

### III. LEGAL STANDARD

The entry of summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the nonmoving party. *Id.*

A party moving for summary judgment initially has the burden of showing the absence of any genuine dispute of material fact based on the evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 153 (1970)*; Schroeder v. Barth, Inc.,* 969 F.2d 421, 423 (7th Cir. 1992). A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994). The evidence and all reasonable inferences drawn therefrom are viewed in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255. Nonetheless, "(s)ummary judgement is not a discretionary remedy. If the plaintiff lacks enough evidence, summary judgement must be granted." *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir. 1994).

### IV. ANALYSIS

The defendants argue that the plaintiff cannot demonstrate that they were deliberately indifferent to his serious medical needs. The Eighth Amendment's protection against cruel and unusual punishment shields inmates from a prison official's deliberate indifference to a substantial risk of serious injury or medical need. *Chapman v. Keltner,* 241 F.3d 842, 845 (7th Cir. 2001). Although the Eighth Amendment does not apply directly to pretrial detainees like the plaintiff, pretrial detainees are afforded the same standard of protection under the Due Process Clause of the Fourteenth Amendment. *Higgens v. Correctional Medical Services of Illinois, Inc.,* 178 F.3d 508, 511 (7th Cir. 1999).

The plaintiff must pass both an objective and a subjective test in order to establish that the defendants violated the constitution. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). The plaintiff must first demonstrate that the alleged deprivation was sufficiently serious. *Id.* Second, the Plaintiff must show that the Defendants acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

"[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997)(citing *Farmer* at 840-42). Inadequate medical treatment due to negligence or even gross negligence does not support an Eighth Amendment violation. *Shockley v Jones*, 823 F.3d 1068, 1072 (7th Cir. 1987). In addition, inmates are not entitled to a specific type of treatment, or even the best care, only reasonable measures to prevent a substantial risk of serious harm. *Forbes v. Edgar,* 112 F.3d, 262, 267 (7th Cir. 1997).

The defendants correctly point out that the plaintiff has not demonstrated that they were deliberately indifferent to his medical needs.  The plaintiff claims he told Defendants Lovedahl and Jamison that he had hit his head , was dizzy, could not feel his extremities and had a headache.  The defendants deny that the plaintiff made these statements when they first saw him and state he had no visible head injury.   Defendant Jamison agrees that the plaintiff told him about his injury when he escorted him to the segregation unit.   Defendant Jamison admits he did not believe the plaintiff had a serious injury, but reported it to the next shift officers since he was leaving for the day.

Even if the court were to assume the plaintiff's version of events is correct, the plaintiff did receive medical attention the next day.  He also continued to see the nurse until he was examined by a doctor a few days later.  It is unfortunate that the defendants did not present the affidavit of one of the medical employees who examined the plaintiff.  Nonetheless, the plaintiff admits that he was seen by medical personnel, was examined and diagnosed by medical personnel and provided medication.  The plaintiff apparently disagrees with the ultimate diagnosis that he may have suffered a concussion.  However, inadequate medical treatment due to negligence or differences in opinion between an inmate and medical staff do not rise to the level of an Eighth Amendment violation.  *Hughes v. Joliet Correctional Center*, 931 F.2d 425, 428 (7th Cir. 1991); *Snipes v. Detella*, 95 F.3d 586, 591 (1996).

In addition, a delay in scheduling an appointment for medical treatment may constitute deliberate indifference.  *Jones v. Simek*, 193 F.3d 485, 490-491 (7th Cir. 1999)  However, "an inmate who complains that delay in medical treatment rose to constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996).  The plaintiff has presented no such evidence.

The court notes the plaintiff claims he still suffers from headaches.  However, if the plaintiff truly believed he was still suffering from a serious medical injury, its interesting to note that he never submitted a written request for any further medical treatment.  The plaintiff did submit written requests for other items.  In addition, the plaintiff has not been in the custody of the Knox County Jail since June 24, 2004, but has presented no evidence of any further medical problems or even any additional requests for medical care.  The motion for summary judgment is granted.

**IT IS THEREFORE ORDERED that:**

**1) The defendants' motion for summary judgement as to all remaining defendants and claims is granted pursuant to  Fed. R. Civ. P. 56. [d/e 59]  The clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff.**

**2) If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4).  A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal.  See Fed. R. App. P. 24(a)(1)(C).  If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of**

the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).

3) The agency having custody of the plaintiff is directed to remit the docketing fee of $250.00 from the plaintiff's prison trust fund account if such funds are available.  If the plaintiff does not have $250.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $250.00 is paid in its entirety.  The filing fee collected shall not exceed the statutory filing fee of $250.00.

4) The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such a change.  Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full.

5) The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.

Entered this __15th_____ day of March, 2007.


                                                               **s\Harold A. Baker**
                              _____
                                              HAROLD A. BAKER
                                  UNITED STATES DISTRICT JUDGE